# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **J.H.**

**No. 25-393** (Berkeley County CC-02-2024-JA-171)

## MEMORANDUM DECISION

Petitioner Mother C.B.[1] appeals the Circuit Court of Berkeley County's May 14, 2025, order terminating her parental rights, arguing that the court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code §§ 48-20-101 to -404 ("UCCJEA").[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The proceedings began in August 2024, when the DHS filed a petition based on the petitioner's substance abuse. Among other concerns, the petition alleged that a Child Protective Services ("CPS") worker observed drug paraphernalia and what appeared to be crack cocaine by the child's bassinet and next to a baby bottle. The DHS further alleged that the then-two-month-old J.H. tested positive for cocaine.

At a preliminary hearing in September 2024, the petitioner's counsel proffered that the petitioner had resided in West Virginia for only "a week or so before the child was taken" but that "[t]he [paternal] grandparents . . . had already been keeping the child." The petitioner stated that the child had just turned three months old, and when the court asked her if "the child ha[d] always lived at [the] grandparents' home," the petitioner replied "yes." The petitioner stated that before her recent move to West Virginia, she had resided with family in Maryland. The court then clarified that the grandparents' house was "the only house that th[e] child ha[d] lived in in [his] short three months." Counsel for the DHS stated his belief that this was correct. The petitioner and the father specified, on the record, the grandparents' address in Martinsburg, West Virginia.[3] In a subsequent written order, the court noted that J.H.'s "parents stated they had only recently arrived in [West

---

[1] The petitioner appears by counsel Jeremy B. Cooper. The Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Counsel Susan J. MacDonald appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The address the parents stated on the record is identical to that listed in the petition as their residence.

Virginia]" and that "a discussion ensued about where the [child] had been living since his birth" in which the "[f]ather asked that the [child] be returned to [the grandparents], in whose home the [child] had been living." Given that this appeal turns on a narrow issue of law, it is sufficient to note that the circuit court subsequently adjudicated the petitioner as an abusive and neglectful parent (and J.H. an abused and neglected child) in October 2024, and terminated the petitioner's parental rights to J.H. following a dispositional hearing in April 2025.[4] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). However, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). The petitioner's sole assignment of error before this Court is that the circuit court lacked subject matter jurisdiction under the UCCJEA to proceed to adjudication or disposition. The petitioner is correct that "[t]he [UCCJEA] is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes." Syl. Pt. 2, *In re R.D.*, -- W. Va. --, --, 922 S.E.2d 567 (2025) (quoting Syl. Pt. 6, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008)). Thus, a circuit court must first satisfy one of four jurisdictional bases, listed in order of priority in West Virginia Code § 48-20-201(a), to preside over an abuse and neglect case. *See In re Z.H.*, 245 W. Va. 456, 464, 859 S.E.2d 399, 407 (2021); *see also In re K.R.*, 229 W. Va. 733, 740, 735 S.E.2d 882, 889 (2012) ("These jurisdictional bases do not operate alternatively to each other, but rather, in order of priority—reaching the next basis of jurisdiction only if the preceding basis does not resolve the jurisdictional issue.").[5]

Here, the circuit court failed to conduct a jurisdictional analysis pursuant to the UCCJEA. However, under our de novo standard of review, we conclude that the circuit court's exercise of subject matter jurisdiction in this case was proper. We need look no further than the first of the UCCJEA's jurisdictional bases, otherwise known as home state jurisdiction. W. Va. Code § 48-20-201(a)(1). Home state jurisdiction is conferred when West Virginia "is the home state of the child on the date of the commencement of the proceeding." *See In re Z.H.*, 245 W. Va. at 464, 859 S.E.2d at 407 (quoting W. Va. Code § 48-20-201(a)(1)). "Home state" is defined as "the state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." *Rosen*, 222 W. Va. at 404, 664 S.E.2d at 745, Syl. Pt. 3 (quoting W. Va. Code § 48-20-102(g)). Critical to this appeal, "[i]n the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned." *Id.*; *see also In re Z.H.*, 245 W. Va. at 459, 859 S.E.2d at 402, Syl. Pt. 7, in part ("When determining whether a court has home state subject matter jurisdiction over . . . a child who is less than six months old, . . . the court [is directed] to

---

[4] The court also terminated the father's parental rights. The child's permanency plan is adoption in the current placement.

[5] The four jurisdictional bases "have been aptly summarized as 1) 'home state' jurisdiction; 2) 'significant connection' jurisdiction; 3) 'jurisdiction because of declination of jurisdiction'; and 4) 'default' jurisdiction." *In re Z.H.*, 245 W. Va. at 464, 859 S.E.2d at 407 (citation omitted).

2

consider where the child lived from the child's birth to the commencement of the proceeding in which custody is at issue."). When the petition was filed in August 2024, J.H. was two months old. Per the petitioner's and the DHS's representations at the preliminary hearing, the infant had lived in West Virginia with his grandparents—the people then acting as his parents—since birth. Therefore, pursuant to our precedent and the plain language of West Virginia Code § 48-20-102(g), West Virginia was the child's home state at the commencement of the proceeding.[6] Accordingly, the court properly exercised jurisdiction over J.H. under West Virginia Code § 48-20-201(a)(1) and committed no error in proceeding to adjudication or to disposition. As such, the petitioner is not entitled to relief.[7]

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 14, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: March 24, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

[6] West Virginia Code § 48-20-102(e) defines "commencement" as "the filing of the first pleading in a proceeding."

[7] The petitioner argues that the circuit court failed to sufficiently develop the facts regarding the whereabouts of the child and his caretakers, stating that the record does not indicate that the child was born in West Virginia. However, the location of J.H.'s birth is not dispositive. *See In re Z.H.*, 245 W. Va. at 459, 859 S.E.2d at 402, Syl. Pt. 8, in part ("A newborn child's hospital stay incident to birth is insufficient to confer home state subject matter jurisdiction . . . ."). The petitioner also states that the record is unclear regarding when this "multi-generational household" moved to West Virginia. While the record indicates that the petitioner and the father recently relocated to West Virginia from Maryland, moving in with the grandparents shortly before the petition was filed, there is no indication that the grandparents lived anywhere but West Virginia, or that—since birth—the child resided anywhere but with his grandparents.

3